**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Senyotta Davis, <u>et al.</u>,       )
                                      )
                 Plaintiffs,          ) Case No. 1:08-CV-425
                                      )
        vs.                           )
                                      )
Accor North America, Inc.,            )
<u>et al.</u>,                        )
                                      )
                                      )
                 Defendants.          )

<u>O R D E R</u>

        This matter is before the Court on motions for summary
judgment filed by Defendants Accor North America, Inc. and Red
Roof Inns, Inc. (Doc. No. 48) and A&K Ishvar, Inc. (Doc. No. 55).
Also before the Court are Plaintiff's objections to Magistrate
Judge Hogan's order of October 21, 2009 (Doc. No. 33).  For the
reasons that follow, both motions for summary judgment are well-
taken and are **GRANTED**; Plaintiff's objections to Magistrate Judge
Hogan's order are **MOOT.**

I. <u>Background</u>

        Plaintiff Senyotta Davis presents claims for wrongful
death, personal injuries, and negligent infliction of emotional
distress against Defendants Accor North America, Inc., Red Roof
Inns, Inc. and A&K Ishvar, Inc. arising from the August 26, 2006
drowning death of her husband, Carl Davis, while the Davis family
was staying at a Red Roof Inn located in Mason, Ohio.  The hotel
itself was owned by A&K Ishvar, Inc. ("A&K) as a franchisee of

Red Roof Inns, Inc. ("Red Roof"). Accor North America, Inc. ("Accor") owned Red Roof at the time of Mr. Davis's death, but has since sold that line of business. Means Aff. (Doc. No. 48-1) ¶ 6. The record, construed in the light most favorable to Plaintiff, clearly demonstrates the following facts.

On the early evening of August 26, 2006, the Davis family, Carl and Senyotta Davis, and their three children, all under the age of ten, and their goddaughter, Shylettia Wilson, age 17 at the time, checked into the Red Roof Inn in question intending to go to the Kings Island amusement park the following day. At around 7:00 p.m., the Davises and Shylettia went to the hotel swimming pool. The pool was three feet deep in the shallow end and nine feet deep in the deep end. Mrs. Davis specifically warned the children to stay in the shallow end because none of the party, including the adults, was a good swimmer.

At one point, a small styrofoam float toy, called a noodle, slipped away from one of the younger children and floated toward the deep end of the pool. Shylettia went to retrieve the toy but hit the breakpoint where the pool changes from shallow to deep. As Shylettia sunk into the water up to her lower lip, she called for help. Mrs. Davis, apparently at Mr. Davis's behest, jumped into the pool to assist Shylettia. However, in trying to help Shylettia, Mrs. Davis began to founder as well. Sometime while this struggle was going on, and no one knows when for sure,

Mr. Davis jumped in and apparently was able to give Mrs. Davis a push toward the side of the pool. In any event, Mrs. Davis reached the side of the pool and was able to drag Shylettia up and out by her hair.

Mr. Davis, however, did not resurface and no one could see him in the pool because the water was too cloudy. Shylettia testified in her deposition that when she stopped coughing and sputtering, she ran to the hotel lobby to call 911 but that a woman, apparently Sami Patel, another hotel employee, told her that Mr. Davis was okay and that he did not need any help. Other hotel guests arrived at the pool and two of them entered the water and started a crisscross search looking for Mr. Davis. They, too, were unable to see him because of the cloudiness of the water. Mr. Davis floated to the surface at some point after the bystanders stopped searching the pool for him. By that time, however, he had drowned.

The record establishes that there were four calls to 911. The first call was made by desk clerk Jack Patel from his cell phone at 7:28 p.m. The second call was made at 7:30 p.m. by an unidentified woman from the front desk of the hotel. The third call was made at 7:31 p.m. by an unidentified hotel guest. The fourth call was made by a Davis family member, identified only as "young girl," at 7:31 p.m. As A&K correctly states in its papers, and as the Court explains further, <u>infra</u> at 17-18,

this unidentified Davis family member can only have been Shylettia Wilson.  Emergency personnel arrived at the hotel at 7:32 p.m., just as other hotel guests were attempting, to no avail, to resuscitate Mr. Davis.  See Doc. Nos. 84-5, 84-7.

The record, construed in Plaintiff's favor, shows that at the time of Mr. Davis's death, A&K's maintenance of the pool violated several provisions of the Ohio Administrative Code.  First, the pool lacked a safety line with floats to indicate the change in depth and slope of the pool bottom.  Ohio Admin. Code § 3701-31-04(L).  Second, there was no sign in the pool area indicating the location of the nearest telephone nor was there a sign posted with numbers to call in case of an emergency.  Ohio Admin. Code § 3701-31-04(K)(4); Ohio Admin Code § 3701-31-05(I)(5).  Third, the pool did not have a twelve foot long pole with a shepherd's crook.  Ohio Admin. Code § 3701-31-05(F).  Fourth, the water was too cloudy to see the bottom of the pool from the pool side.  Ohio Admin. Code § 3701-31-07(D).[1]

In addition to these violations, Plaintiff also alleges that the pool was in violation of Ohio Admin. Code § 3701-31-06(L), which mandates that a public pool cannot be operated if,

---

[1]     Plaintiff also alleged that A&K violated Ohio Admin. Code § 3701-31-05(I) because there was not a telephone within 500 feet of the pool.  However, the Warren County pool inspector, Carrie Yeager, testified that the phone in the lobby of the hotel was within 500 feet of the pool and, thus, complied with this requirement.  Yeager Dep. at 33.

<u>inter alia</u>, the grate or covering of the main drain is not in place and securely fastened.  Insofar as the present record is concerned, however, all that can be stated with any certainty is that county inspection records show that the drain cover was in place on August 2, 2006 but that it was not in place on August 28, 2006, two days after Mr. Davis's death.  Yeager Dep. at 52-53.  There is no evidence in the record whether the drain cover was or was not in place at the time of Mr. Davis's death.

Finally, Plaintiff claims that A&K violated Ohio Admin. Code § 3701-31-06(M) because A&K's employees were not properly trained in operating the pool.

Plaintiff Senyotta Davis, on behalf of herself and her three minor children (collectively "Plaintiff"), filed suit for negligence against Accor, Red Roof and A&K on June 20, 2008. Plaintiff's amended complaint (Doc. No. 10), filed on September 18, 2008, asserts claims against Accor, Red Roof, and A&K for wrongful death (Counts I-III) and negligent infliction of emotional distress (Counts VII-IX) on behalf of Senyotta Davis and her minor children.  The amended complaint also asserts claims for personal injury on behalf of Mr. Davis against A&K and Accor (Counts IV-VI) pursuant to Ohio Rev. Code § 2305.21.[2]  The

---

[2]     Section 2305.21 states: "In addition to the causes of action which survive at common law, causes of action for mesne profits, or injuries to the person or property, or for deceit or fraud, also shall survive; and such actions may be brought notwithstanding the death of the person entitled or liable

amended complaint seeks damages in excess of $75,000 on each count, plus costs, prejudgment interest, and such other relief as may be appropriate. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because Plaintiff and Defendants are citizens of different states and the amount in controversy is in excess of $75,000.[3]

Defendants filed their motions for summary judgment on December 18, 2009. Accor and Red Roof's motion for summary judgment is based on the premise that A&K was an independent franchisee, and thus was not their agent. Therefore, these Defendants contend that they are not liable, either directly or vicariously, for A&K's alleged negligence in operating the swimming pool. Additionally, Accor and Red Roof argue that summary judgment in their favor is appropriate to the extent that Plaintiff fails to establish A&K's negligent operation of the pool. In its motion, A&K argues that the swimming pool was an

thereto." Ohio's survivorship statutes permit the representative of the decedent's estate to assert a survivor action for the decedent's own injuries leading to his death. Peters v. Columbus Steel Castings Co., 873 N.E.2d 1258, 1261 (Ohio 2007).

[3]     The original complaint and the second amended complaint alleged that Plaintiff is a resident of the State of Indiana. On March 29, 2010, on order of the Court to amend defective jurisdictional allegations, Plaintiff filed an amended complaint alleging that she is a citizen and domiciliary of the State of Indiana. Doc. No. 92, Third Amended Complaint ¶ 3. The domicile of unemancipated minor children is generally that of the parents. Rodriquez-Diaz v. Sierra-Martinez, 853 F.2d 1027, 1030 (1st Cir. 1988). Accordingly, Mrs. Davis's minor children are deemed to be citizens of the State of Indiana as well.

open and obvious hazard.  Therefore, A&K argues that it is
entitled to summary judgment because it had no duty to warn or
protect Plaintiff from the alleged dangerous condition of the
pool.  Alternatively, A&K argues that its alleged negligence
and/or violations of the Ohio Administrative Code were not the
proximate cause of Plaintiff's injuries.

Both motions for summary judgment have been briefed and
are ready for disposition.

## II. Summary Judgment Standard of Review

Summary judgment is proper "if the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show that there is no
genuine issue as to any material fact and that the moving party
is entitled to judgment as a matter of law."  Fed. R. Civ. P.
56(c).  The evidence presented on a motion for summary judgment
is construed in the light most favorable to the non-moving party,
who is given the benefit of all favorable inferences that can be
drawn therefrom.  United States v. Diebold, Inc., 369 U.S. 654
(1962).  "The mere existence of some alleged factual dispute
between the parties will not defeat an otherwise properly
supported motion for summary judgment; the requirement is that
there be no genuine issue of material fact."  Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 248 (1986)(emphasis in original).  The
Court will not grant summary judgment unless it is clear that a

7

trial is unnecessary.  The threshold inquiry to determine whether there is a need for trial is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  <u>Anderson</u>, 477 U.S. at 250.  There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  <u>Id.</u>

The fact that the weight of the evidence favors the moving party does not authorize a court to grant summary judgment.  <u>Poller v. Columbia Broadcasting System, Inc.</u>, 368 U.S. 464, 472 (1962).  "[T]he issue of material fact required by Rule 56(c) . . . to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or a judge to resolve the parties' differing versions of the truth at trial."  <u>First National Bank v. Cities Service Co.</u>, 391 U.S. 253, 288-89 (1968).

Moreover, although summary judgment must be used with extreme caution since it operates to deny a litigant his day in court, <u>Smith v. Hudson</u>, 600 F.2d 60, 63 (6th Cir.), <u>cert. dismissed</u>, 444 U.S. 986 (1979), the United States Supreme Court has stated that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as

an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 327 (1986). According to the Supreme Court, the standard for granting summary judgment mirrors the standard for a directed verdict, and thus summary judgment is appropriate if the moving party establishes that there is insufficient evidence favoring the non-moving party for a jury to return a verdict for that party. <u>Id.</u> at 323; <u>Anderson</u>, 477 U.S. at 250.

Accordingly, summary judgment is clearly proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial." <u>Celotex Corp.</u>, 477 U.S. at 322. Significantly, the Supreme Court also instructs that the "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion" against a party who fails to make that showing with significantly probative evidence. <u>Id.</u>; <u>Anderson</u>, 477 U.S. at 250. Rule 56(e) requires the non-moving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." <u>Id.</u>

Further, there is no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or similar materials negating the opponent's claim. <u>Id.</u> Rule

56(a) and (b) provide that parties may move for summary judgment "with or without supporting affidavits." Accordingly, where the non-moving party will bear the burden of proof at trial on a dispositive issue, summary judgment may be appropriate based solely on the pleadings, depositions, answers to interrogatories, and admissions on file.

### III. <u>Analysis</u>

As the Court's summary of Defendants' arguments indicates, to the extent there is an agency relationship between Accor and Red Roof on one hand, and A&K on the other hand, the liability of the former is derivative of the liability of the latter. Accordingly, the Court first takes up A&K's motion for summary judgment since resolution of that motion may obviate the need to consider whether there was an agency relationship among the Defendants.

### A. <u>A&K's Alleged Negligence</u>

Plaintiff sues A&K for wrongful death, personal injuries, and negligent infliction of emotional distress to recover damages caused by A&K's alleged negligence in operating the swimming pool.

In order to recover on a negligence claim, the plaintiff is required to prove the traditional tort elements of duty, breach, and proximate causation. <u>Uddin v. Embassy Suites Hotel</u>, 848 N.E.2d 519, 522 (Ohio Ct. App. 2005). In a premises

liability case, such as this one, the defendant's duty to the plaintiff depends on the plaintiff's status - invitee, licensee, or trespasser. <u>Id.</u> In this case, it is not disputed that the Davises and Shylettia were business invitees of A&K.

The owner of a business is not an insurer of the safety of its business invitees. <u>Id.</u> at 523. Rather, the owner owes its business invitees a duty of ordinary care to maintain the premises in a reasonably safe condition and to warn invitees of latent or hidden dangers. <u>Id.</u> A business owner also has a duty to inspect the premises to discover possible dangerous conditions of which he is unaware and to take reasonable precautions to protect invitees from foreseeable dangers. <u>Kirchner v. Shooters on the Water, Inc.</u>, 856 N.E.2d 1026, 1032 (Ohio Ct. App. 2006).

Where, however, the hazard on the premises is open and obvious, a business owner owes no duty of care to invitees. <u>Armstrong v. Best Buy Co., Inc.</u>, 788 N.E.2d 1088, 1089 (Ohio 2003). The rationale behind the doctrine is "that the open and obvious nature of the hazard itself serves as a warning." <u>Id.</u> "Thus, the owner or occupier may reasonably expect that persons entering the premises will discover those dangers and take appropriate measures to protect themselves." <u>Id.</u> While an open and obvious hazard is one that an invitee may reasonably be expected to discover, the invitee does not necessarily have to see the hazard for it to be open and obvious. <u>McElhaney v. Marc</u>

11

Glassman, Inc., 882 N.E.2d 455, 463 (Ohio Ct. App. 2007); see
also Frano v. Red Robin Int'l, Inc., 907 N.E.2d 796, 801 (Ohio
Ct. App. 2009)("[T]he danger does not actually have to be
observed by the plaintiff in order for it to be an open and
obvious condition under the law."). Where the open and obvious
doctrine applies, it operates as a complete bar to negligence
claims. Armstrong, 788 N.E.2d at 1090.

In this case, Plaintiff's negligence claims are based
on A&K's alleged violations of the Ohio Administrative Code
regulating swimming pool safety. Nevertheless, A&K's alleged
violations of the administrative code do not bar application of
the open and obvious doctrine as long as the violations
themselves were open and obvious. Lang v. Holly Hill Motel,
Inc., 909 N.E.2d 120, 124-25 (Ohio 2009). In Ohio, "a swimming
pool presents an open and obvious condition that should be
appreciated by both minors and adults." Mullens v. Binsky,
719 N.E.2d 599, 604 (Ohio Ct. App. 1998).[4] A pool "becomes
unreasonably dangerous only when there is a hidden defect or
dangerous condition posing a risk of death or serious bodily
harm." Id.

---

[4]     In Uddin, the court held that a swimming pool is not
an open and obvious danger to children of tender years, i.e., ten
years old or less. 848 N.E.2d at 524-25. This aspect of the
Uddin decision is inapposite, however, because the Davis children
were not at risk of drowning and Shylettia was age 17 at the
time.

In this case, the Court agrees with A&K that the
swimming pool, even in light of the violations of the
administrative code, was an open and obvious danger or hazard.
Therefore, A&K owed no duty of care to Plaintiff or Mr. Davis.
As A&K accurately argues, all of the alleged defects or
administrative code violations that are established on this
record - the absence of a safety line, the cloudy condition of
the water in the pool, the lack of signs displaying emergency
phone numbers and directions to the nearest phone, and the
inadequate pole and shepherd's crook - were all open and
observable conditions to Plaintiff and Mr. Davis, as well as
Shylettia.

Plaintiff also argues that the lack of a safety line
concealed the drop-off from the shallow end to the deep end, and,
therefore, the drop-off was not an open and obvious hazard.  The
record establishes, however, that both Mrs. Davis and Shylettia
were aware that the pool had a deep end.  Moreover, the fact that
the slope was not readily visible was open and obvious because of
the cloudy condition of the water.  See Hager v. Griesse, 505
N.E.2d 982, 985-86 (Ohio Ct. App. 1985)(holding that defendant
did not have a duty to warn plaintiff, who was injured in dive,
about shallow end of the pool because it is common knowledge that
the depth of a pool may vary); Mullens v. Binsky, 719 N.E.2d 599
603-07 (Ohio Ct. App. 1998) (affirming trial court's conclusion

that breakpoint in pool was not hidden danger, despite cloudy water, because pool itself was open and obvious danger). Therefore, the Court concludes that the lack of a safety line did not render the pool's drop-off a non-obvious hazard.

Arguably A&K's alleged failure to have its employees properly trained to operate the pool was not open and obvious, but the consequences of the alleged failure to train, specifically the aforementioned code violations, were. Essentially, A&K's alleged failure to train its employees how to operate the pool properly is intertwined with or inseparable from the other administrative code violations. Therefore, the Court concludes that under the circumstances of this case, A&K's failure to train its employees properly was an open and obvious danger as well. Where the condition is open and obvious, "the plaintiff is responsible for his or her own decision to proceed through a known danger." Lang, 909 N.E.2d at 125.

A&K concedes that the missing drain cover may not have been an open and obvious hazard. Plaintiff, however, bears the burden to show that the owner had actual knowledge of the hazard or that it existed for a sufficient length of time for a factfinder to infer that the owner had constructive knowledge of it. Presley v. City of Norwood, 303 N.E.2d 81, 84 (Ohio 1973). Nevertheless, A&K correctly argues that there is no evidence that it had actual knowledge that the drain cover was missing.

14

Moreover, there is no evidence in the record as to when the cover was removed or became detached from the drain. See id. ("[E]vidence as to the length of time the hazard had existed is necessary to support an inference that defendant had constructive notice."). As the Court stated earlier, the record only reflects that the drain cover was in place on August 2 but not in place on August 28. The drain cover, however, could have become displaced after Mr. Davis' death. Since Plaintiff cannot establish that A&K had actual or constructive knowledge that the drain cover was missing, she cannot establish A&K's liability for this alleged hazardous condition.

Plaintiff argues, however, that the rescue doctrine forecloses A&K's reliance on the open and obvious doctrine to bar her claims. The rescue doctrine applies "when an injured party is hurt in an attempt to rescue a person in danger as a result of that person's own negligence." Fleming v. AAS Serv., Inc., 896 N.E.2d 175, 181 (Ohio Ct. App. 2008). The rescue doctrine, however, only becomes relevant if it is necessary to assess the rescuer's contributory negligence. Marks v. Wagner, 370 N.E.2d 480, 483 (Ohio Ct. App. 1977) ("Technically, the rescue doctrine is limited solely to the issue of the existence of contributory negligence on behalf of the rescuer[.]"). Essentially, the rescue doctrine is the plaintiff's counter to the alleged tortfeasor's defense of contributory negligence. See Moore v.

<u>Baron Drawn Steel Corp.</u>, 770 N.E.2d 117, 125 (Ohio Ct. Com. Pl. 1998)(stating that the rescue doctrine vitiates a defense of contributory negligence). The rescue doctrine is relevant once the plaintiff establishes that the defendant was negligent in the first place. <u>Fleming</u>, 896 N.E.2d at 181. Moreover, in <u>Armstrong</u>, the Supreme Court of Ohio made clear that in applying the open and obvious doctrine, trial courts are to focus on the nature of the hazard itself and not the plaintiff's conduct in entering the hazard. 788 N.E.2d at 1091. In this case, because the hazards about which Plaintiff complains were open and obvious, the rescue doctrine is not applicable.

Plaintiff also argues that attendant circumstances preclude application of the open and obvious doctrine. Plaintiff argues that the fact that Mrs. Davis and Shylettia were apparently drowning and in need of rescue was an attendant circumstance which distracted Mr. Davis from noticing the open and obvious danger presented by the pool. An attendant circumstance generally is some distraction that would come to the attention of the invitee and excuse his failure to observe the hazard. <u>Hunter v. Jamin Bingo Hall</u>, No. L-08-1084, 2008 WL 4093685, at *3 (Ohio Ct. App. Sept. 5, 2008); <u>Lacey v. Sports Award, Inc.</u>, No. 21346, 2006 WL 2459094, at *4 (Ohio Ct. App. Aug. 25, 2006). An attendant circumstance may create a genuine issue of material fact about whether a hazard was open and

obvious at the time.  <u>Hunter</u>, 2008 WL 4093685 at *3.  Under the circumstances of this case, however, Mrs. Davis's and Shylettia's peril was not an attendant circumstance.  As A&K accurately argues in its reply brief, Mr. Davis had the opportunity to observe the hazardous nature of the pool before the alleged attendant circumstance of the need to rescue arose.  It might be a different outcome if, for instance, Mr. Davis arrived at the pool area at the moment Mrs. Davis and Shylettia began to founder and immediately on impulse jumped into the pool to rescue them.  However, those are not the facts of this case.  Accordingly, the Court concludes that attendant circumstances do not present a genuine issue of material fact about whether the pool was an open and obvious condition.

Plaintiff contends that A&K's employees negligently prevented Shylettia from calling 911 when she reached the front desk of the hotel.  Shylettia's deposition testimony indicates that Sami Patel at least dissuaded her from calling 911 by telling her that there was no emergency at the pool.  Ordinarily the Court would have to accept this testimony as being true in considering the motion for summary judgment.  The record, however, clearly contradicts Shylettia's testimony on this point.  As A&K correctly points out, the record shows that at 7:31 p.m. a Davis family member, identified only as "young girl," but which

can only have been Shylettia, called 911.[5]  There is no evidence

in the record that Shylettia made two trips to the office to call

911.  In other words, there is no evidence in the record that the

7:31 p.m. call was Shylettia's second attempt to call 911.

Indeed, Mrs. Davis testified that Shylettia only went to the

office once to call for help.  See S. Davis Dep. at 126 (Doc. No.

54, at 14).  Thus, the record plainly refutes Shylettia's

testimony that she was prevented from calling 911.  Consequently,

the Court is not required to accept her testimony as being true.

See Scott v. Harris, 550 U.S. 372, 380 (2007)("When opposing

parties tell two different stories, one of which is blatantly

contradicted by the record, so that no reasonable jury could

believe it, a court should not adopt that version of the facts

for purposes of ruling on a motion for summary judgment.").

Accordingly, A&K cannot be held liable for preventing Shylettia

from calling for help.

     Plaintiff also contends that A&K's employees

negligently failed to call for assistance when they were notified

that Mr. Davis was missing in the pool.  Plaintiff argues that

---

        [5]     There is no evidence that Mrs. Davis went to the office
for help.  To the contrary, the record shows that Mrs. Davis
remained in the pool area the entire time.  Mrs. Davis's two
minor daughters ran to the office with her minor son, C.D., for
help.  C.D.'s testimony, however, shows that the two girls ran
back to the pool with C.D., Jack Patel, and Shane Patel.  C.D.
Dep. at 22 (Doc. No. 59, at 7).  Therefore, neither of the
daughters could have been the Davis family member who called 911.

three separate A&K employees failed to call for help before Jack

Patel's call to 911 and that even then he did not call until Mr.

Davis surfaced in the pool.  Some Ohio case law supports the

proposition that business owners must take reasonable steps to

rescue or aid their injured or imperiled invitees - a duty

usually satisfied by calling the police or other emergency

personnel.  See Heys v. Blevins, No. 16291, 1997 WL 335564, at *6

(Ohio Ct. App. June 13, 1997); but see Lajoie v. Maumee River

Yacht Club, No. L-89-014, 1990 WL 7976, at *2 (Ohio Ct. App. Feb.

2, 1990)(business owner has no duty to rescue invitees).  The

record demonstrates that, contrary to Plaintiff's argument, Jack

Patel did not delay calling 911 until after Mr. Davis resurfaced

in the pool.  Comparison of the 911 transcripts shows that Mr.

Davis resurfaced at about 7:31 p.m. while Patel was on the phone

with the 911 operator.  Compare Doc. No. 84-5, at 3 (Patel 911

transcript starting at 7:28 p.m.: "[W]e didn't see him first

time, but now that we found him and trying to get him out[.]")

with Doc. No. 84-5, at 8 ("Hotel guest" 911 transcript at 7:31

p.m.: "[T]hey just pulled him out[.]").[6]

The record does support a conclusion that there was at

least some delay between the time the Davis children notified

---

        [6]    No objection has been made to admissibility of the 911
transcripts.  These particular statements would likely be
admissible pursuant to Fed. R. Evid. 803(1) as present sense
impressions and/or Fed. R. Evid. 803(2) as excited utterances.

Jack Patel that Mr. Davis was drowning and the time he called 911. Patel testified that when the children came for help he immediately followed them through the hotel manager's apartment back to the pool area. Not seeing him there, Patel thought perhaps Mr. Davis had gone back to his room. So Patel retraced his steps back to the Davis's room. Not finding anyone in the room, Patel returned to the pool area via the parking lot. In other words, Patel essentially circled back to his original position at the pool. Patel Dep. (Doc. No. 47), at 7-9. Sometime after his return to the pool, but definitely at 7:28 p.m., Patel called 911. The critical questions are, how long did Patel (or any other A&K employee) delay calling 911 after being notified about the emergency, and, would it have made a difference had someone called 911 earlier? The Court has carefully studied the record and concludes as a matter of law that it only supports a conclusion that there was about a two to three minute delay in calling 911 and that this delay did not contribute to Mr. Davis' death. The record compels this conclusion for the following reasons.

The 911 calls provide firm and fixed reference points for the timing of the events. Mrs. Davis testified that Shylettia returned to pool no more than five minutes after she

left to get help.  S. Davis. Dep. at 113 (Doc. No. 54, at 1).[7]
Since the record establishes that Shylettia called 911 at 7:31
p.m., that can only mean that Mr. Davis entered the pool at
around 7:26 p.m.  Moreover, the record establishes that the
children ran to the office for help fairly immediately after Mr.
Davis failed to resurface.  Therefore, a fair inference is that
the children notified A&K of the emergency at around 7:26 also.
Accordingly, since the record establishes that Patel called 911
at 7:28:42 p.m., the delay in calling 911 was from two to three
minutes.

        The record further establishes that sheriff's deputies
arrived on the scene at 7:32 p.m., about four minutes after
Patel's 911 call, and that paramedics arrived a 7:33 p.m., about
five minutes after Patel's 911 call.  Doc. No. 84-7.  The record
also establishes that Mr. Davis resurfaced at 7:31 p.m. but,
unfortunately, he had already died by that time.  Had Patel
called 911 at 7:26 p.m., when first notified by the children, at
best the deputies and paramedics would have arrived on the scene
at 7:30 p.m. or 7:31 p.m., when Mr. Davis was already dead.

---

[7]     Shylettia testified that she went directly from the
pool to the office but that she did not know how long she was in
the office before she left.  Wilson Dep. at 33, 38.

Accordingly, the delay in calling 911 did not contribute to Mr. Davis' death.[8]

IV. <u>Plaintiff's Objections to Magistrate Judge Hogan's Order</u>

On October 21, 2009, Magistrate Judge Hogan entered an order (Doc. No. 31) denying Plaintiff's motion to amend the calendar order to allow the late submission of expert reports and granting Defendants' motion to exclude opinion evidence from Plaintiff's expert witnesses. Judge Hogan essentially determined that Plaintiff had not established good cause for failure to submit her expert reports to Defendants by the deadline originally established and that this failure was not harmless. Therefore, Judge Hogan concurred with Defendants' request to impose an evidentiary-based sanction and precluded Plaintiff's experts from testifying.

---

[8]    Similarly, testimony from bystanders that they searched the pool for Mr. Davis for 15 minutes is contradicted by the 911 reference points. <u>E.g.</u> Cynthia Brown Dep. at 12-13 (Doc. No. 72, at 12-13). The record shows that at about the time this incident started, a group of seven friends returned to the Red Roof Inn after spending the day at Kings Island. The depositions of four of these individuals, James Morris, Elizabeth Morris, Cynthia Brown, and Rochelle Jones, have been filed. All of these witnesses agree that they encountered Shylettia in the parking lot as she was leaving the pool area to get help and that they immediately went to the pool to assist. As indicated, Shylettia must have left for help at about 7:26 p.m. and Mr. Davis surfaced at 7:31 p.m. Therefore, this group can only have searched for Mr. Davis for about five minutes at the most. Brown Dep. (Doc. No. 72) at 7-9; J. Morris Dep. (Doc. No. 68) at 5-6; E. Morris Dep. (Doc. No. 70, at 5-16); Jones Dep. (Doc. No. 74), at 5-6. Thus, the record does not support Plaintiffs' contention that Mr. Davis was in the pool for 15 minutes before help was summoned.

Plaintiff moved Judge Hogan to reconsider this order (Doc. No. 32) and then filed objections to the order with the Court (Doc. No. 33). In her objections, Plaintiff generally argues that Judge Hogan's sanction of striking her experts was too harsh under all of the circumstances. In light of the ruling on Defendants' motions for summary judgment, the Court need not reach the issue of whether the sanction imposed by Judge Hogan was too harsh. A&K's motion for summary judgment did not rely on expert testimony or opinion in any fashion and, therefore, there was no need for Plaintiff to rebut the motion with her own expert testimony. A&K's motion was based on the open and obvious nature of the hazard presented by the swimming pool. Since open and obvious hazards are ones which are presumed to be readily discoverable by invitees (i.e., lay persons), expert opinion on this issue presumably would not be helpful to the trier of fact, and hence, inadmissible. Fed. R. Evid. 702. During the status conference with the Court, counsel for Plaintiff stated that her response to the motions for summary judgment would have been different had she been able to rely on her expert reports. The Court notes, however, that in her memoranda in opposition, Plaintiff never indicated that she needed her experts' reports to respond properly to the motions for summary judgment. The party opposing a motion for summary judgment has the burden under Rule 56(f) to explain why she cannot oppose the motion. Klepper v.

First American Bank, 916 F.2d 337, 343 (6th Cir. 1990).  Since

Plaintiff did not file a Rule 56(f) motion, the Court can proceed

to rule on the motions for summary judgment without deciding

whether Judge Hogan erred in striking Plaintiff's experts.

Gettings v. Building Laborers Local 310 Fringe Benefits Fund, 349

F.3d 300, 305 (6th Cir. 2003) ("Where a party opposing summary

judgment and seeking a continuance pending completion of

discovery fails to take advantage of the shelter provided by Rule

56(f) by filing an affidavit, there is no abuse of discretion in

granting summary judgment if it is otherwise appropriate.").

    Accordingly, Plaintiff's objections to Magistrate Judge

Hogan's order of October 21, 2009 are **MOOT.**

<u>Conclusion</u>

In summary, for the reasons stated, the swimming pool in this case was an open and obvious hazard. Therefore, A&K did not owe a duty of care to Plaintiff or Plaintiff's decedent, Mr. Davis. Accordingly, A&K Ishvar, Inc.'s motion for summary judgment is well-taken and is **GRANTED**. Because Accor North America, Inc. and Red Roof Inns, Inc.'s liability is derivative of A&K's liability, their motion for summary judgment is well-taken and is **GRANTED** as well. The complaint is **DISMISSED WITH PREJUDICE.** Plaintiff's objections to Magistrate Judge Hogan's order of October 21, 2009 are **MOOT. THIS CASE IS CLOSED.**

**IT IS SO ORDERED**

Date April 23, 2010            s/Sandra S. Beckwith
                              Sandra S. Beckwith
                    Senior United States District Judge